JOHN A. BARNES

*v.*

THE PEOPLE *ex rel.* Moloney, Attorney General.

*Opinion filed November 1, 1897.*

1. INSURANCE—*the insurance statutes of this State relate only to companies or corporations.* There is nothing in the statutes of Illinois which prohibits, abridges or restricts the right of citizens of this State to engage, as individuals, in the business of insurance, as all such restrictions relate only to companies or corporations organized under the stock or mutual plan.

2. SAME—*right of foreign citizen to do insurance business in Illinois.* A citizen of a foreign State may engage, as an individual, in the business of insurance in this State to the same extent as a citizen of this State, and the fact that the eleventh clause of section 22 of the Marine and Fire Insurance act (Rev. Stat. 1874, p. 598,) provides that the provisions of that section shall apply to foreign individuals as well as foreign corporations does not affect that right.

3. SAME—*section 22 of the Marine and Fire Insurance act construed.* One acting in this State as the agent of citizens of another State engaged in the insurance business, but not incorporated or associated as a partnership, is not liable for the penalty imposed by section 22 of the Marine and Fire Insurance act (Rev. Stat. 1874, p. 598,) for failure to observe the requirements of that act concerning foreign insurance companies doing business in Illinois.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

MYRON H. BEACH, for appellant.

E. C. AKIN, Attorney General, (T. J. SCOFIELD, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The People of the State of Illinois brought this suit in debt against John A. Barnes, to recover the penalty prescribed by the ninth clause of section 22 of the act entitled "An act to incorporate and govern fire, marine and inland navigation insurance companies doing busi-

ness in the State of Illinois," in force March 11, 1869. (Hurd's Stat. 880.)

The declaration contains eight counts, in each of which it is alleged that the defendant acted as the agent of certain persons named therein, who were citizens of the United States and of the State of New York, and resided in the State of New York, and were then engaged in insuring property against loss by fire by issuing to the owners thereof policies of insurance, and that defendant, as such agent, solicited insurance and delivered the policy set out in the count, and collected the premium therefor, without having procured from the Auditor of Public Accounts or insurance superintendent of the State of Illinois a certificate of authority stating that the makers of said policy had complied with the requisitions of the said act. The policies set out in the several counts were made by persons engaged in the business of underwriters, each of whom was individually liable for a separate amount placed after his name, but not for the whole or any part of another underwriter's liability, yet all acted together to effect the insurance. In such cases the underwriters act through one person, who is the agent of each of them, and policies of this kind are called "Lloyds Insurance." The underwriters in these policies are denominated "Underwriters at New York Central Lloyds," "Lafayette Fire Lloyds," "Tradesmen's Fire Lloyds" and "Traders' Fire Lloyds of New York." A demurrer, which was both general and special, was interposed to the declaration and overruled. The defendant electing to stand by his demurrer and refusing to plead further, the court rendered judgment against him for the penalty of $500.

The question to be determined is, whether or not an individual, acting as agent for a number of citizens of the State of New York, not a partnership and not incorporated, who have not complied with the requirements of the act under which this suit was brought, and where the agent has not procured from the Auditor of Public

Accounts or insurance superintendent a certificate of authority stating that such individuals have complied with such requisitions, is liable to the penalty provided by said act.  The title of the act, showing its subject and scope, has already been given.  The act provides for the formation of corporations to insure property in this State, fixes their minimum capital and brings all insurance companies previously organized under its provisions, except as to the amount of their capital, the investment of such capital and their assets, and the privileges and powers granted by their charters.  It provides for the organization of corporations of two kinds, viz., joint stock companies and companies organized on the mutual plan, and the Auditor has no power, under the laws of this State, to issue a license to a company of a different character. (*Mutual Fire Ins. Co.* v. *Swigert*, 120 Ill. 36.)  It declares that all companies incorporated or extended under it shall be deemed and taken to be bodies corporate and politic in fact and in name, and shall be subject to all the provisions of law in relation to corporations, so far as the same are applicable.  It requires an annual statement, under oath, of the amount of capital or stock actually paid in; the property or assets held by the company; the liability of the company; its income during the preceding year, and its expenditures during the same time.  The twenty-second section fixes the conditions upon which foreign insurance companies may take risks or transact the business of insurance in this State, and it is therein provided that it shall not be lawful for any insurance company, association or partnership, incorporated by or organized under the laws of any other State of the United States, or any foreign government, for any of the purposes specified in the act, to transact any insurance business in this State except upon the condition therein fixed. The amount of capital must be equal to that required of similar companies formed under the act; the company must first appoint an attorney in this State on whom pro-

cess of law can be served; a copy of the charter or deed of settlement of the company must be filed; a statement, under oath, of the president or vice-president and secretary of the company, showing its financial condition, must be filed; if the company is incorporated by or organized under any foreign government, it must deposit $200,000, and in all cases a certificate of authority must be procured from the Auditor stating that the company has complied with all the requisitions of the act which applies to said companies, and giving the name of the attorney appointed to act for the company. The provisions of the act, unless in one instance, relate only to insurance companies, and not to an individual engaging in that business; and in *People* v. *Fesler*, 145 Ill. 150, it was said that the provisions of section 22 were aimed against foreign insurance companies attempting to do business in this State, and that an agent could only be made liable by acting for an insurance company, association or partnership incorporated or organized under the laws of some other State or foreign government. That such is the general purpose of the act cannot be doubted.

The reliance of the Attorney General, however, is placed upon a provision contained in the eleventh clause of said section 22. That is the only provision contained in the statute which includes individuals in the regulation of the business, and it is expressly limited by its terms to that section alone, and applies only to foreign individuals. It is as follows: "The provisions of this section shall apply to all foreign companies, partnership associations and individuals, whether incorporated or not." From this provision it is argued that the word "company," as used in all the paragraphs of the section, is not to be taken in its ordinary sense, but includes individuals as well as corporations and associations incorporated by or organized under the laws of any other State or any foreign government. As the provision relates only to that section, if it has the effect claimed, it op-

erates upon foreign individuals alone, and imposes a restriction on the citizens of other States not imposed upon citizens of this State.

Insurance is an agreement by which the insurer, for a consideration, agrees to indemnify the insured against loss, damage or prejudice to certain property described in the agreement, for a specified period, by reason of specified perils. For a long period of time this business was conducted by individuals alone, both in England and in this country, and at common law any person might properly enter into a contract to indemnify another against loss by fire. An individual, unless he may be prevented by statute or public policy, may still lawfully enter into an undertaking of that kind. (11 Am. & Eng. Ency. of Law, 281; Angell on Insurance, 43; Park on Insurance, 5; Wood on Fire Insurance, 22; May on Fire Insurance, 34.) There is nothing in the statutes of this State prohibiting a citizen of the State from transacting insurance business, or abridging or restricting such privilege. There is no statute with which he must comply in order to transact such business, but such restrictions as are imposed relate to insurance corporations organized under the stock or mutual plan. The right of the individual to engage in that business is recognized in *Greene* v. *People*, 150 Ill. 513, and it is there practically admitted by the declaration that they must act upon their responsibility as individuals.

It is unquestioned that this State may prescribe conditions under which foreign insurance corporations may be permitted to do business here. A corporation exists only by virtue of the law creating it, and has no existence beyond the boundaries of the State where such law has force. It cannot exercise any rights or privileges in a foreign jurisdiction unless permitted to do so by express or implied permission of the foreign State, and it is on the principle of comity that States permit corporations of other States to act within their boundaries.

Corporations are not citizens, within the meaning of the constitution of the United States guaranteeing equal privileges and equal protection of the laws. *Paul* v. *Virginia*, 75 U. S. 168; *Pembina C. S. M. & M. Co.* v. *Pennsylvania*, 125 id. 81; *Norfolk and Western Railroad Co.* v. *Pennsylvania*, 136 id. 114; *Hooper* v. *California*, 155 id. 648; Elliott on Railroads, sec. 30.

The decisions as to corporations do not apply to natural persons, who are entitled to the privileges and immunities of the citizens of the several States. The constitution of the United States assures to the citizens of other States the right to pursue such lawful business and calling within this State as citizens of this State may pursue. Section 2 of article 4 of that instrument provides: "The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." And the fourteenth amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." If the citizens of this State may, without restriction, enter into contracts of insurance, the same right is guaranteed to the citizens of other States. The provision in question is against the citizens of other States merely and solely because they are not citizens of this State. It draws a line between them and our own citizens based on residence, and abridges a privilege freely allowed to our own citizens. The constitutional safeguard protects the citizens of other States against unequal legislation of that character which forbids to them the privilege of pursuing such lawful occupations as are permitted to the citizens of this State.

If, as contended, the provision is intended as a police regulation for the protection of the citizens of this State from irresponsible underwriters acting individually and

without incorporation or organization under any law, the same necessity applies in the case of the irresponsible and conscienceless underwriter who is a citizen of this State. If the business of insurance, on account of its importance and nature, is a proper subject for the exercise of the police power, such power must extend to and operate upon the citizens of this State and other States equally. A discrimination directed only against underwriters residing without the State is invalid.

It is argued that the requirement for the appointment of an agent in this State upon whom service can be had may be properly enforced against a foreign underwriter, and that such a requirement is not a discrimination, since service may be had here upon the underwriter who is a citizen. In considering the question of the constitutionality of the eleventh clause we have thus far assumed that it had the full force and meaning claimed for it by the Attorney General; but it is apparent that there are requirements against foreign corporations in the act with which an individual could not comply and which could not be applied to him. He can have no charter or deed of settlement to be filed, no president or vice-president or other chief officer of himself who can make the statement under oath, and he cannot, by any process, become similar to a corporation formed under the provisions of the act. Taking the first and second clauses relating to the appointment of an agent together, it is plain that they provide for a method of service on a corporation and cannot be applied to an individual. If the legislature can provide that no citizen of another State shall engage in commercial or other business in this State, or deal or make contracts with citizens of this State, without being compelled to appoint an agent on whom service can be had here, it has not been attempted in this case.

The demurrer should have been sustained, and the judgment will be reversed and the cause remanded.

*Reversed and remanded.*