ROBERT K. ANZINGER *et al.*, Plaintiffs-Appellees, *v.* PHILIP R. O'CON-NOR, Acting Director of the Department of Insurance *et al.*, Defendants-Appellants.

First District (1st Division)   No. 81-568

Opinion filed September 27, 1982.

Epton, Mullin, Segal & Druth, Ltd., of Chicago, for appellant Illinois State Medical Inter-Insurance Exchange.

Tyrone C. Fahner, Attorney General, of Springfield, for appellant Philip R. O'Connor.

Daniel Karlin and Stuart Perlman, both of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants, Philip R. O'Connor, Acting Director of the Illinois Department of Insurance (Director), and the Illinois State Medical Inter-Insurance Exchange (ISMIE), appeal from a judgment of the circuit

court of Cook County which reversed the decision of the Director. The Director had determined that the classification scheme and the insurance rate scheme applied to emergency room physicians was permissible and that plaintiffs should bear the costs of the administrative proceedings. Defendant Director only appeals from that portion of the trial court's order which denied the assessment of costs against plaintiffs. Defendant ISMIE raises the following issues on appeal: (1) whether insurance policy classification of emergency room physicians based on risk factors uniquely associated with the practice of emergency medicine was permitted by the statute regulating medical liability insurance rates; (2) whether insurance policy classification of emergency room physicians by medical speciality was proper under ISMIE's manual of rules and rates; (3) whether ISMIE's underwriting rules pertaining to part-time and obligatory staffing of emergency rooms was unfairly discriminatory; (4) whether the decision of the Director upholding ISMIE's classification scheme was supported by substantial competent evidence; (5) whether the trial court improperly substituted its judgment for that of the Director; and (6) whether the trial court erred in reversing the assessment of hearing costs against plaintiffs and prohibiting the future assessment of costs.

A discussion of the background of the parties may be helpful in understanding the issues involved since this appeal arises out of a dispute involving insurance rates for medical malpractice coverage. Generally, the amount of insurance premiums is determined by the classification in which a particular type of physician is placed; the higher the classification, the larger the premium that is assessed. The rates assigned by insurance companies are regulated by the Illinois Insurance Code. Ill. Rev. Stat. 1977, ch. 73, par. 613 *et seq.*

The Illinois Medical Inter-Insurance Exchange (ISMIE) is a physician-owned and controlled reciprocal insurance company created to provide Illinois physicians with medical malpractice insurance. In 1976, the first year of its operation, ISMIE adopted the classification and rate system used by the Hartford Insurance Company which had previously insured Illinois physicians. This system classified physicians into five groups. Emergency room physicians were placed in class three and paid the premiums for that class. In 1977, after receiving negative input from some of its members, ISMIE adopted a seven class rating system following recommendation of the same by its "Ad Hoc Advisory Committee."

Under this new classification system, nonsurgical specialities were placed in Classes 1, 2 and 3, while those in the surgical specialties were placed in Classes 4 through 7. Full-time emergency room physi-

cians were placed in Class 4, although other physicians with specialities other than emergency medicine could work in an emergency room up to 36 hours per month without incurring a change in classification. A Class 1, 2 or 3 physician who worked more than 36 hours in an emergency room would be charged 50% of his regular rate and 50% of the Class 4 rate. A full-time resident whose emergency room activity did not exceed 24 hours per week would also be charged 50% of the Class 4 rate. In addition, the ISMIE rating scheme exempted physicians who staffed an emergency room under a "Pontiac Plan." A "Pontiac Plan" is a corporate arrangement whereby some staff doctors contract with the hospital to provide emergency room services, thereby eliminating the need to involve other staff physicians who are not interested in working in the emergency room. Finally, in each of the seven classifications, physicians were permitted to downgrade their ranking by demonstrating that they did not perform certain procedures typical to their class. This opportunity to downgrade their status was not afforded to emergency room physicians. The ISMIE classification scheme only provided for an upgrade in the classification of emergency room physicians.

Plaintiffs are full-time emergency room physicians. On November 1, 1977, plaintiffs requested that the Director review the new classification system. Plaintiffs charged that the reclassification of emergency room physicians violated section 155.18 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767.18), which prohibits insurance rates which are excessive and unfairly discriminatory. On June 14, 1978, the Department of Insurance gave notice of a fact-finding, nonadversarial hearing to be conducted on the issues raised by plaintiffs. The Director appointed an independent, consulting actuary as hearing officer in the matter.

Plaintiffs petitioned and were permitted to intervene in the administrative proceedings and a preliminary hearing was held. Since plaintiffs had requested the review, the hearing officer, following the usual and customary procedure of the Department of Insurance, ordered that the costs of his fees in the matter be assessed to plaintiffs. (Ill. Rev. Stat. 1977, ch. 73, par. 1020(3).) Plaintiffs objected to this order, arguing that it was premature under section 27 D of Rule 24.02 of the Illinois Insurance Department Regulations. Plaintiffs were ordered to pay a $500 advance payment to the hearing officer, which they in fact paid.

The hearing convened and the hearing officer found that on the basis of the evidence presented, the classification system adopted by ISMIE was not unfairly discriminatory towards emergency room phy-

sicians, nor were the rates charged to the physicians excessive. He recommended that: (1) the hearing be dismissed with prejudice; (2) plaintiffs bear the costs of the hearing officer's fees, and (3) each party pay its own attorney fees. On March 24, 1980, the Director adopted the findings, conclusions and recommendations of the hearing officer.

Pursuant to the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*), plaintiffs filed this action alleging, *inter alia*, that the decision of the Director was contrary to the manifest weight of the evidence and that the premium rate charged to emergency room physicians was unfairly discriminatory and excessive. The circuit court found that the decision of the Director upholding the classification scheme and premium rate charges of ISMIE was contrary to the manifest weight of the evidence and was found to be excessive and unfairly discriminatory in violation of section 155.18 of the Illinois Insurance Code. (Ill. Rev. Stat. 1979, ch. 73, par. 767.18.) In addition, the court reversed without remand that portion of the Director's decision which assessed fees and expenses to plaintiffs and ordered that no fees or expenses may be assessed by the Director on account of the proceedings.

At the outset, we note that the final determination of the Director was defended in the trial court by both ISMIE and the Attorney General on behalf of the Director. The issue of whether ISMIE has the right to defend the decision of the Director was not addressed by the trial court, nor was it raised on appeal by any of the parties. An examination of the record indicates that the order of the trial court was directed to the Director alone. Although plaintiffs argue in their brief that the Director waived his right to contest the decision of the circuit court on appeal, the issue of the propriety of the prosecution of this appeal by ISMIE on behalf of the Director was not raised by plaintiffs in this appeal. We will not consider the issue in this appeal since plaintiffs failed to raise this issue below. *Brown v. Lober* (1979), 75 Ill. 2d 547, 389 N.E.2d 1188.

ISMIE raises numerous issues which pertain to the classification scheme which it employed in determining insurance rates. Although these issues are stated separately, each of the issues is intertwined with the trial court's decision as to whether the decision of the Director was contrary to the manifest weight of the evidence. Therefore, we shall address these issues as follows: (1) whether the decision of the Director which concluded that the premium rates charged to emergency room physicians was not excessive was contrary to the manifest weight of the evidence and whether the premium rates were excessive in violation of the statute; and (2) whether the decision of

the Director which concluded that the premium rates charged to emergency room physicians were not unfairly discriminatory was contrary to the manifest weight of the evidence and whether the premium rates were unfairly discriminatory in violation of statute.

ISMIE first contends that due consideration to section 155.18 of the Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 767.18) was not given by the trial court. Defendant ISMIE urges that its determination of the malpractice insurance rates charged to emergency room physicians was proper under the statute which permits classification according to risks pursuant to section 155.18(b)(4). In establishing classification, ISMIE maintains that the statute is clear in the factors which may be considered in establishing a classification scheme. ISMIE refers to section 155.18(b)(2) which states in pertinent part:

> "Consideration shall be given, to the extent applicable, to past and prospective loss experience within and outside this State, to a reasonable margin for underwriting profit and contingencies, to past and prospective expenses both countrywide and those especially applicable to this State, and to all other factors, including judgment factors, deemed relevant within and outside this State." (Ill. Rev. Stat. 1979, ch. 73, par. 767.18(b)(2).)

Defendant ISMIE argues that the statute does not require that the same factors be utilized when assigning risk classifications, but that the statute requires grouping and identification of similar risks. As an example, ISMIE notes that urologists and emergency room physicians were both assigned to Class 4 because the relative risk of malpractice claims against the two specialities was deemed by ISMIE to be the same. Defendant, however, argues that the factors which contribute to the incidence of malpractice claims against urologists are not the same factors which are necessarily valid for emergency room physicians. Defendant urges that its "Ad Hoc Advisory Committee" concluded that the risks attendant with the practice of emergency medicine were deemed to be greater than some specialties and less than other areas of specialization and that this does not constitute unfair discrimination so long as other physicians with similar risks were treated identically.

Defendant also contends that the classification of emergency room physicians is consistent with the ISMIE manual and that a number of considerations played a part in the classification scheme. The considerations relied upon by ISMIE are as follows: (1) There is no history of an established doctor-patient relationship and there is a reduced ability to research relevant medical history of the patient; (2) an emer-

gency room physician does not have the luxury of accepting or rejecting patients and must take whatever develops; (3) patients who utilize emergency rooms frequently have no prior regular health care contact and their problems are frequently acute because of the patient's failure to treat symptoms during the early states of illness; (4) it is difficult to insure that patients will follow instructions and avail themselves of necessary post-emergency care; (5) routine matters are conducted under emergency conditions in an often hectic and depersonalized milieu; and (6) the scope of procedures in emergency practice are not well defined and, therefore, are difficult to assess for insurance. ISMIE contends that the primary basis for classification of physicians depends upon the medical specialty which is practiced. ISMIE refers to the "Classification Procedure" in its Manual on Rules and Rates, which states:

> "*CLASSIFICATION PROCEDURE*
>
> A. Classification assignment shall be made on the basis of medical specialty and medical procedure risk classification in accordance with the rules established for this plan, contained in this manual.
>
> B. A classification assignment determined by reference to a physician's medical specialty *** may be changed to a lower risk classification assignment, on the basis of represented medical procedure being performed ***."

ISMIE argues that the testimony of its staff and the members of its "Ad Hoc Advisory Committee" was consistent and that the testimony indicated that the classification of emergency room physicians was determined more by the nature of emergency medicine, rather than by the procedures which were used or not used in the emergency room. ISMIE also urges that the trial court misapprehended the classification scheme utilized by ISMIE. Defendant argues that ISMIE never classified physicians according to surgical specialties and nonsurgical specialties without additional considerations. Paul Singer, the chief executive officer of ISMIE, in a discovery deposition which was admitted into evidence by the hearing officer explained that the physicians in Classes 1, 2 and 3 were deemed to be nonsurgical and could perform minor or intermediate surgeries and those in Classes 4, 5, 6 and 7 were classed as surgical specialties as a matter of convenience in the application of a geographical location rating rule. Singer also stated that the issue of whether an emergency room physician performed surgery was not relevant to the classification of emergency room physicians; rather, it was the environment in which emergency medicine was practiced which influenced the classification and not the

procedures performed.

ISMIE also urges that the nature of emergency medicine does not lend itself to the concept of restricting procedures as a way to lower the physician's insurance rate. According to Singer, if an emergency room physician eliminated enough aspects of emergency medicine to reduce his classification to Class 1 or 2, then the physician would cease to be a practitioner of emergency medicine. ISMIE urges that the Director was correct in his finding that the classification scheme was proper because of the hazards normally associated with the emergency room environment.

Defendant also urges that the decision of the Director was supported by substantial competent evidence. ISMIE notes that plaintiff Anzinger acknowledged that the emergency room was a busy place, often filled with unhappy individuals who are not familiar with doctors or the health care system. ISMIE argues that plaintiffs did not submit any evidence to refute the considerations which influenced the "Ad Hoc Advisory Committee" in assigning the physicians to Class 4. Defendant argues that at the time the classification scheme was developed, emergency medicine was in its infancy and that there was no actuarial claims data for emergency physicians that would merit reliance. Defendant argues that in the absence of reliable data, it was entirely proper to base its classification upon informed judgment.

Plaintiffs contend that the trial court properly found that the findings and decision of the Director were against the manifest weight of the evidence. Plaintiffs maintain that the classification scheme employed by ISMIE was properly determined by the circuit court to be unfairly discriminatory. They argue that the evidence established that emergency room physicians only performed minor surgical techniques associated with Classes 1, 2 and 3 and that if emergency room physicians were performing major surgery, the physicians were insured as surgeons. Plaintiffs also contend that the evidence established that emergency room physicians were not permitted to take patients into the operating room. Plaintiffs also argue that the ISMIE manual as it pertained to classification procedures permitted physicians to be assigned to a reduced risk class based upon the representation that the physician was not performing procedures which would otherwise result in a higher risk classification. Plaintiffs maintain that by not permitting emergency room physicians to lower their risk classification, ISMIE unfairly discriminated against emergency room doctors. Plaintiffs refer to a July 1977 memorandum from Hank Nussbaum, ISMIE's director of underwriting and risk management, which indicated that assignment of emergency room to Class 4 was the decision

of the "Ad Hoc Advisory Committee" and that the underwriting department would be amenable to adoption of a dual class approach employed by the Insurance Services Organization (ISO), the statistical agency for the insurance industry. Plaintiffs also refer to a May 1977 memo from Nussbaum which stated that: "a realistic rating approach would be to adopt the current ISO class structure which calls for Class 3 designation if ER physician does no major surgery and Class 5 if he does major surgery." Plaintiffs urge that these memoranda demonstrate the arbitrariness of ISMIE's classification scheme. Plaintiffs also contend that it was discriminatory for ISMIE to classify other physicians based upon procedures performed and to classify emergency room physicians based upon the fact that they practice medicine in an emergency room and not upon the procedures utilized in an emergency room.

Plaintiffs also maintain that the decision of the Director was not supported by substantial evidence. Plaintiffs contend that ISMIE's reference to the Florida Medical Association Plan which placed emergency room physicians in Class 4 of a five-class rating scheme is misplaced since the testimony of ISMIE's witness established that the five-class rating scheme was employed seven to ten years prior to the adoption of ISMIE's seven class system and that in 1977, the Florida Medical Association used a seven class system which placed emergency room doctors in Class 3 or Class 5, depending upon whether the major surgery was performed. Plaintiffs also maintain that ISMIE declined to act upon the recommendations of its director of underwriting and risk management and its actuarial consultant.

Plaintiffs argue that the trial court properly determined that the premium rates charged to emergency room physicians were excessive pursuant to section 155.18(b)(1) of the Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767.18(b)(1)). Section 155.18(b)(1) states, in pertinent part:

> "Rates shall not be excessive *** nor shall they be unfairly discriminatory. No rate shall be held to be excessive unless such rate is unreasonably high for the insurance provided, and a reasonable degree of competition does not exist in the area with respect to the classification to which such rate is applicable."

Plaintiffs maintain that the evidence established that the premium rates charged emergency room physicians increased by 68.8% for Territory I physicians and 50.5% for Territory II physicians,[1] while the

---

[1]Territory I consists of the counties of Cook, Du Page, Kane, Lake, Madison, McHenry, Peoria, Rock Island and St. Clair. Territory II covers the remainder of Illinois.

average rate increase for all other doctors was 6.5%. Plaintiffs argue that the trial court properly concluded that there was not a reasonable degree of competition because the other insurance companies did not have comparable policies available to emergency room physicians. They also contend that the hearing officer and the trial court both noted that ISMIE's actuaries recommended limiting any premium increase to 30% to 40%.

Judicial review of a decision of an administrative agency is limited to a determination of whether the decision of the agency is against the manifest weight of the evidence and a court may only reverse where the decision is clearly contrary to the evidence presented. (*Tanquilut v. Department of Public Aid* (1979), 78 Ill. App. 3d 55, 396 N.E.2d 1126.) In the instant case, the trial court concluded that the decision of the Director that the premium rate charged to emergency room physicians was not unfairly discriminatory or excessive was contrary to the manifest weight of the evidence. The court also determined that the premium rates were excessive and unfairly discriminatory in violation of section 155.18 of the Insurance Code. Ill. Rev. Stat. 1977, ch. 73, par. 767.18.

Pursuant to section 155.18 of the Insurance Code, a premium rate may not be excessive or unfairly discriminatory. Subsection (b)(1) of section 155.18 provides that a rate will not be deemed to be excessive unless the rate is both "unreasonably high for the insurance provided" and "a reasonable degree of competition does not exist in the area with respect to the classification to which such rate is applicable." The hearing officer determined that the evidence established that there was not a reasonable degree of competition since no other insurance carrier offered coverage at the same liability limits to emergency room physicians as ISMIE. The hearing officer concluded that there was no adequate statistical data at the time that ISMIE filed its rate schedule which could show whether the experience for emergency room physicians indicated that the filed rate was excessive. The hearing officer indicated that a limited rate comparison would not be sufficient to substantiate the excessiveness of the premium rate and that it would be helpful to compare the classification scheme used by other insurance companies. The hearing officer concluded that the classification of emergency room physicians was permissible and, therefore, the rate assessed the physicians was also acceptable.

The record as it pertains to the classification of emergency room physicians by ISMIE is not clear. The record does indicate that emergency medicine was an emerging medical specialty and that ISMIE and other insurers did not have sufficient loss data for or experience

with emergency room doctors. The record also discloses that there was considerable doubt as to where to classify the doctors. Comparison with other insurance companies classification schemes established a lack of uniformity in the classification of emergency room physicians. Our review of the record indicates that ISMIE did not have any substantial or reliable data or experience upon which to base its classification of emergency room physicians. The evidence in support of ISMIE's classification scheme is, by no means, clear and is often contradictory. The trial court concluded, and we agree, that the decision of the Director which upheld ISMIE's classification scheme was contrary to the manifest weight of the evidence and not supported by the evidence.

■ Based upon a classification scheme which the trial court concluded was improper, the court found that the premium rates assessed to emergency room physicians were excessive in violation of section 155.18 of the Insurance Code and the decision upholding the rates was contrary to the manifest weight of the evidence. The record discloses that emergency room physicians were assessed a 68.8% or 50.5% premium increase depending upon whether the physician was in Territory I or Territory II, respectively. The hearing officer found that the average rate increase for ISMIE's insureds was 6.5%. One consultant to ISMIE recommended that rate increases for an individual class of physicians be limited to 30%, while another consultant recommended that the increase in premium rates that resulted from reclassification be limited to 40%. Our review of the record fails to disclose any evidence which would warrant such a large increase in insurance premiums for emergency room physicians, especially when the record indicates that the rate increase was so disproportionate when compared to the average rate increase. Accordingly, we agree with the trial court that the premium rate was excessive and in violation of section 155.18 of the Insurance Code and that the decision of the Director upholding the rate was contrary to the manifest weight of the evidence.

Pursuant to section 155.18 of the Insurance Code, a premium rate also may not be unfairly discriminatory. Unfair discrimination in the context of insurance law arises where similarly situated individuals are treated differently. (*Bentley v. Allstate Insurance Co.* (1971), 227 Ga. 708, 182 S.E.2d 770.) In the instant action, the trial court concluded that ISMIE classified all doctors according to whether or not surgery was performed and that emergency room doctors were included in the classification with surgeons although the doctors did not perform surgery. Additionally, the court found that all physicians, except emergency room physicians, were classified according to medical procedures which were performed. The record also reveals that a phy-

sician, except for an emergency room physician, could obtain a reduced premium rate by representing to ISMIE that certain medical procedures were excluded from the physician's practice. The trial court determined that both ISMIE and the Department of Insurance found that the practice of medicine in an emergency room was the primary reason that the physicians received a higher rating, although ISMIE's manual and its witnesses indicated that the practice of medicine in an emergency room was not a salient factor in the classification of emergency room physicians. We agree with the trial court that the classification of emergency room doctors which resulted in higher premium rates resulted in unfair discrimination against the physicians in violation of section 155.18 and that the decision of the Director upholding the rates was contrary to the manifest weight of the evidence.

Both ISMIE and the Attorney General on behalf of the Director of Insurance contend that the trial court erred in reversing the decision of the Director as it pertained to the assessment of costs against plaintiffs. ISMIE maintains that it was improper for the trial court to prohibit the Director from assessing costs against plaintiffs since the costs were assessed pursuant to a Department rule and since it was plaintiffs who initiated the proceedings before the Director. The Director argues that it was error for the trial court to prohibit the Director from ordering fees and costs to be assessed against either party because of the proceedings. Plaintiffs argue that the trial court properly reversed the assessment of fees and costs against plaintiffs and that, contrary to the Director's position, the trial court's order does not preclude the assessment of costs against ISMIE on remand to the Director.

■ Under the circumstances of this case, we find no error in the trial court's reversal of the assessment of costs and fees against plaintiffs. Since plaintiffs have prevailed in their challenge to ISMIE's premium rates, it would not be appropriate to permit costs to be charged to plaintiffs. We do not read the trial court's order as an absolute prohibition against the assessment of fees and costs; rather, the order prohibits the Director from charging plaintiffs with fees and costs.

Accordingly, the judgment of the circuit court of Cook County is affirmed and remanded to the circuit court for further proceedings.

Judgment affirmed and remanded.

McGLOON and GOLDBERG, JJ., concur.