GRIFFIN SYSTEMS, INC., Plaintiff-Appellant, v. JOHN E. WASHBURN, Director of Insurance, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—3701

Opinion filed February 26, 1987.

Barnard & Associates, Ltd., of Chicago (Robert W. Boughton, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Appellant, Griffin Systems, Inc. (Griffin), brings this appeal seeking reversal of a cease and desist order issued by the Illinois Department of Insurance (the Department), and affirmed after review by the trial court. The trial court agreed with the Department's finding that Griffin was engaged in the selling of insurance without a certificate of authority.

The Department's cease and desist order prohibits Griffin from

distributing its "Vehicle Protection Plan" (plan). Griffin was marketing the plan to Illinois residents who had recently purchased new automobiles. Under the plan, consumers pay a yearly fee in exchange for Griffin's promise to pay for the repair or replacement of certain automobile parts should those parts break down or fail to operate during a specified coverage period.

After a hearing on the matter, the Department ruled that the plan constituted an insurance policy and entered a cease and desist order against Griffin. Griffin appealed the Department's ruling to the trial court which, after holding its own hearing, agreed with the Department's findings.

Griffin now appeals contending: (1) that the trial court erred in ruling that the plan constitutes an insurance policy rather than a service contract; (2) that the Department's cease and desist order is not supported by the evidence; and (3) that the trial court erred in failing to find that the plan, because it is a service contract, is governed by Federal law and is therefore exempt from State regulation.

We affirm.

BACKGROUND

The facts of this case are not in dispute. Griffin is an Ohio corporation which began marketing the plan in Illinois in early 1984. Griffin sent a sales brochure and a sales agreement to Illinois residents who had recently purchased new automobiles. The brochure describes the plan as "a mechanical service contract." Under the plan, Griffin agrees to repair or replace any of the specific automobile parts covered by the plan should those parts break down or fail during the coverage period.

The plan provides for a $25 deductible per part. When a customer needs mechanical service, he contacts Griffin, which then forwards the claim request to Great Plains Insurance, Inc. Only upon approval by Great Plains adjusters will a repair be covered by the plan's provisions. A customer can bring his vehicle into any facility the customer selects. Griffin itself, however, does not perform any of the repair services.

The customer is permitted to select one of four different policies. The policies differ in their length of time and with respect to the number of parts covered. The policies also contain certain exclusions, limitations, and conditions.

The Department determined that under Illinois common law the plan indemnified customers against possible future losses and, as a result, the plan constituted an insurance policy. The trial court subse-

quently agreed with the Department's ruling, prompting Griffin to bring this appeal.

OPINION

I

■■ The central issue in this appeal is whether Griffin engages in the business of selling insurance when it offers the plan to Illinois residents. In reviewing the Department's decision, our function is to determine whether the Department's finding that the plan constitutes an insurance policy was clearly against the manifest weight of the evidence. *Anzinger v. O'Connor* (1982), 109 Ill. App. 3d 550, 440 N.E.2d 1014.

The Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 733) fails to define the term "insurance." Nevertheless, a definition is provided by the Illinois common law. One Illinois court, for example, defined "insurance" as:

> "[A]n agreement by which the insurer, for a consideration, agrees to indemnify the insured against loss, damage, or prejudice to certain property described in the agreement, for a specified period, by reason of specified perils." (*Barnes v. People ex rel. Moloney* (1897), 168 Ill. 425, 429, 48 N.E. 91.)

Insurance has also been described as:

> "[A] contract of indemnity by which the insurer *** undertakes to indemnify the insured against pecuniary loss arising from the destruction of, or injury to, the insured's property ***. The essence of the contract is indemnity against loss." *Continental Casualty Co. v. Fleming* (1964), 46 Ill. App. 2d 276, 284, 197 N.E.2d 88.

■ Thus, it appears that "insurance" can be characterized as involving: (1) a contract or agreement between an insurer and an insured which exists for a specific period of time; (2) an insurable interest (usually property) possessed by the insured; (3) consideration in the form of a premium paid by the insured to the insurer; and (4) the assumption of risk by the insurer whereby the insurer agrees to indemnify the insured for potential pecuniary loss to the insured's property resulting from certain specified perils.

In the present case, Griffin's plan contains each of the four elements set forth above.

First, the "Mechanical Service Contract" is clearly an agreement between Griffin and a customer which lasts for a specified period of time. The exact length of the time period varies and depends upon

which of the four policies the customer purchases.

Second, there is an insurable interest involved, namely, the mechanical parts of the customer's vehicle which are covered by the plan.

Third, under the plan, the customer is obligated to pay a premium in return for Griffin's promise to reimburse the customer for the repair or replacement of certain automobile parts.

And fourth, Griffin agrees to indemnify the customer for a potential future loss; specifically, the costs involved in the repair or replacement of certain automobile parts.

■ Hence, we agree with the Department and the trial court that Griffin's plan contains all of the elements contained within the common law definition of insurance. The essence of the plan is to indemnify the customer; to reimburse the customer for a possible future loss to a specified piece of property caused by a specified peril, namely, mechanical failure. Consequently, the plan constitutes insurance and properly falls within the authority of the Department.

The plan is not, as Griffin contends, merely a "service contract," nor does it fall within the purview of a "warranty."

An example of a "service contract" can be found in the case of *Rayos v. Chrysler Credit Corp.* (Tex. App. 1985), 683 S.W.2d 546. In *Rayos*, the court reviewed a 5-year/50,000-mile owner protection plan issued by Chrysler. Under the Chrysler plan, Chrysler agreed to repair or replace certain parts should those parts fail or break down within the specified period (5 years or 50,000 miles). The court in *Rayos* noted, however, that the Chrysler plan included a requirement that the customer bring his vehicle into a Chrysler Corporation dealer for any of the covered repairs. Because Chrysler built the vehicle to which it was going to make repairs, the *Rayos* court properly determined that the plan issued by Chrysler amounted to a service contract rather than an insurance policy.

A "warranty," on the other hand, was found to exist in *GAF Corp. v. County School Board* (4th Cir. 1980), 629 F.2d 981. There, a company agreed to repair or replace a roof it had sold to a customer should the roof ever leak in the future. However, the company which agreed to perform the repairs was the same company that had sold the roof. Consequently, because the company promising to make the repairs was the same company that had sold the roof, the *GAF* court found that the agreement to repair or replace constituted a warranty rather than an insurance policy.

■ An analysis of the cases set forth above reveals that a warranty and a service contract have many of the same features. None-

theless, the distinguishing feature which sets them apart from an insurance policy is the fact that the respective companies *manufacture or sell the products which they agreed to repair or replace.* No third parties are involved, nor is there a risk accepted which the company, because of its expertise, is unaware of. Through a warranty or service contract, a company simply guarantees that its own product will perform adequately for a period of time.

Insurance policies, on the other hand, are generally issued by third parties and are based on a theory of distributing a particular risk among many customers. The case of *Guaranteed Warranty Corp., Inc. v. State ex rel. Humphrey* (1975), 23 Ariz. App. 327, 533 P.2d 87, is a prime example of a company's selling an insurance policy rather than a warranty or a service contract.

In *Guaranteed,* a company was in the business of selling contracts which provided that the company would replace the customer's television picture tube should the tube ever fail as a result of a manufacturing defect. The company, however, did not manufacture, nor did it sell, television sets or television tubes. Instead, the company merely marketed the tube replacement contracts. Because the company did not manufacture or sell the television tubes, the *Guaranteed* court found that the tube replacement contracts were, in reality, promises to indemnify the customer for a potential future loss. The tube replacement contracts were not merely a method to guarantee the performance of the company's product, for the company did not manufacture or sell the tubes in question. That being the case, the *Guaranteed* court found that the tube replacement contracts constituted insurance policies.

Likewise, in the case at bar, it is significant to note that Griffin itself does not perform any of the repairs or replacements covered by the plan. Nor does Griffin manufacture or sell automobiles or automobile parts. Instead, Griffin merely sells a plan which promises to indemnify the customer for any losses he may suffer through the breakdown or failure of certain mechanical parts in his automobile. In this respect, Griffin's plan is analogous to that which was found to constitute an insurance policy by the *Guaranteed* court.

The procedure employed by Griffin also suggests that the plan amounts to an insurance policy rather than a warranty or service contract. The plan requires a customer who needs a repair to first obtain an estimate from an independent automobile service center. The estimate is then reviewed by a claims adjuster with the Great Plains Insurance Company. Upon receiving approval by the adjuster, the customer authorizes the independent service center to perform the work.

Under the plan, the customer is obligated to pay a $25 deductible for each repair performed. Griffin thereafter pays the service center the balance due. Furthermore, like an insurance policy, the plan involves exclusions and limitations as to Griffin's liability.

We believe that based on these facts, the evidence supports the Department's decision that Griffin's plan constitutes an insurance policy. It is clearly not a warranty such as that present in *GAF*, nor is it a service agreement like that existing in *Rayos*. Instead, the plan issued by Griffin is an indemnity agreement whereby Griffin agrees to indemnify its insured for potential losses arising from the mechanical breakdown of the insured's vehicle. That being the case, Griffin is engaged in the business of selling insurance and is therefore subject to the Department's rules and regulations. Accord, *Guaranteed Warranty Corp., Inc. v. State ex rel. Humphrey* (1975), 23 Ariz. App. 327, 533 P.2d 87.

We also find that the facts of the instant case are clearly distinguishable from those present in *Vredenburgh v. Physicians Defense Co.* (1906), 126 Ill. App. 509. In *Vredenburgh*, a group of attorneys agreed to represent several physicians in any malpractice claims that might be brought against the physicians. The agreement contained an attorney fee cap at which point the attorney's obligation under the agreement ceased. However, as the *Vredenburgh* court found, such an arrangement involves no indemnity for losses; instead it was merely a commonplace attorney-retainer agreement. (126 Ill. App. 509, 513.) Unlike the employer-employee relationship existing in *Vredenburgh*, Griffin's plan includes an element of indemnity and is therefore more properly considered to be an insurance policy.

II

The remaining arguments raised by Griffin must fail as a result of the discussion presented above.

■ Griffin first argues that the Department's original cease and desist order was unsupported by the evidence. As set forth previously, however, our function is to determine whether the Department's decision was contrary to the manifest weight of the evidence. (*Anzinger v. O'Connor* (1982), 109 Ill. App. 3d 550, 440 N.E.2d 981.) In the present case, Griffin submitted all of its sales literature, a copy of the plan, and a copy of the mechanical service contract. These are the documents which contain the details of Griffin's business. Because these documents form the heart of the dispute, they are, in this instance, sufficient evidence to support the Department's decision. Consequently, Griffin's assertion that the Department's original decision

120

was unsupported by the evidence is rejected.

■ Griffin's claim that its plan is governed exclusively by Federal law is also in error. Individual States clearly have the right to regulate the business of insurance and, in light of our finding that Griffin's plan constitutes an insurance policy, no Federal preemption exists. See *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 156 N.E.2d 587.

CONCLUSION

Accordingly, for the reasons set forth above, we affirm the decision of the circuit court of Cook County.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.