GRIFFIN SYSTEMS, INC., APPELLANT, *v.* OHIO
DEPARTMENT OF INSURANCE, APPELLEE.

[Cite as *Griffin Systems, Inc. v. Ohio Dept.
of Ins.* (1991), 61 Ohio St.3d 552.]

(No. 90–1442—Submitted June 4, 1991—Decided August 28, 1991.)

*Philip Z. Vogel, Berkman, Gordon, Murray & Palda, J. Michael Murray, Lorraine R. Baumgardner* and *Jeremy A. Rosenbaum,* for appellant.

*Lee I. Fisher,* Attorney General, *Joseph D. Emanuel* and *Jeanny M. Vorys,* for appellee.

---

SWEENEY, J. The determinative issue presented in this appeal is whether appellant's vehicle protection plans are contracts "substantially amounting to insurance" within the meaning of R.C. 3905.42. For the reasons that follow, we answer such inquiry in the negative, and therefore reverse the judgment of the court of appeals and reinstate the trial court's judgment.

R.C. 3905.42 provides as follows:

"No company, corporation, or association, whether organized in this state or elsewhere, shall engage either directly or indirectly in this state in the business of insurance, or enter into any contracts substantially amounting to insurance, * * * unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with."

Appellee ODI argues that the vehicle protection plans offered and sold by appellant are "contracts substantially amounting to insurance," and, thus, should be subject to the full array of insurance regulations within R.C. Title 39. ODI contends, and the court of appeals below agreed, that the key element that subjects appellant's protection plans to insurance laws and regulations is that appellant is neither the seller nor the manufacturer of the product it purports to warrant. ODI essentially asserts that extended warranties offered by sellers and manufacturers are part of the inducement process of making the product more desirable to the prospective buyer. Since appellant is an independent third party to the transaction, ODI submits that the claimed warranty appellant offers and sells is in reality a contract "substantially amounting to insurance."

The appellant, on the other hand, citing *State, ex rel. Duffy, v. Western Auto Supply Co.* (1938), 134 Ohio St. 163, 11 O.O. 583, 16 N.E.2d 256, and *State, ex rel. Herbert, v. Standard Oil Co.* (1941), 138 Ohio St. 376, 20 O.O. 460, 35 N.E.2d 437, contends that since its vehicle protection plans cover only those repairs necessitated by mechanical breakdown of defective parts, the protection plans constitute warranties and not contracts of insurance. Appellant relies on *Duffy, supra,* and argues that the instant vehicle protection plans limit reimbursement to loss due to defects in the product, and do not promise to reimburse loss or damage resulting from perils outside of and unrelated to defects in the product itself. Appellant submits that the issue of

whether the seller or manufacturer (as opposed to an independent third party) offers or sells the type of contract in issue is wholly irrelevant.

In *Duffy, supra,* this court was asked to determine whether written guarantees issued by Western Auto covering tires it sold constituted contracts "substantially amounting to insurance" under G.C. 665.[1] The language of one of the Western Auto guarantees stated that it protected the tires " 'against blowouts, cuts, bruises, rim-cuts, under-inflation, wheels out of alignment, faulty brakes or other road hazards that may render the tire unfit for further service (except fire and theft).' It then provided that 'In the event that the tire becomes unserviceable from the above conditions, we will (at our option) repair it free of charge, or replace it with a new tire of the same make at any of our stores, charging ...... th of our current price for each month which has elapsed since the date of purchase. The new tire will be fully covered by our regular guarantee in effect at time of adjustment. Furthermore: every tire is guaranteed against defects in material or workmanship without limit as to time, mileage or service.' " *Id.* at 165, 11 O.O. at 584, 16 N.E.2d at 257.

In finding that the Western Auto guarantees were contracts substantially amounting to insurance, this court held in *Duffy, supra,* at paragraphs three and four of the syllabus:

"A warranty promises indemnity against defects in an article sold, while insurance indemnifies against loss or damage resulting from perils outside of and unrelated to defects in the article itself.

"A contract whereby the vendor of automobile tires undertakes to guarantee the tires sold against defects in material or workmanship without limit as to time, mileage or service, and further expressly guarantees them for a specified period against 'blowouts, cuts, bruises, rim-cuts, under-inflation, wheels out of alignment, faulty brakes or other road hazards that may render the tire unfit for further service (except fire or theft),' or contracts to indemnify the purchaser 'should the tire fail within the replacement period' specified, without limitation as to cause of such 'failure,' is a contract 'substantially amounting to insurance' within the provisions of Section 665, General Code, which requires such guarantor or insurer to comply with the laws of the state authorizing and regulating the business of insurance."

The foregoing syllabus language clearly indicates that the "guarantees" in *Duffy* were found to be contracts substantially amounting to insurance

---

1. General Code 665, 116 Ohio Laws, Part I, 234, is the predecessor statute to R.C. 3905.42, and the relevant language of both provisions is substantially similar. The language of G.C. 665 can be found in *Herbert, supra,* at 380–381, 20 O.O. at 462, 35 N.E.2d at 440.

because such guarantees promised to indemnify for losses or damages to the product outside of and unrelated to defects inherent in the product itself.

Several years later, in *Herbert, supra,* this court was faced with another tire warranty/guarantee that was challenged by the Attorney General of Ohio. Therein, the tire warranty offered by Standard Oil promised repair or replacement for a limited period under certain conditions and provided in pertinent part:

" 'This Warranty and Adjustment Agreement does not cover punctures, tires ruined in running flat, tires injured or destroyed by fire, wrecks or collisions, tires cut by chains, or by obstruction on vehicle, theft, clincher tires, tubes used in any form, or tires used in taxicab or common carrier bus service.

" 'This Warranty and Adjustment Agreement does not cover consequential damages.' " *Id.,* 138 Ohio St. at 378, 20 O.O. at 461, 35 N.E.2d at 439.

In finding that the Standard Oil tire warranty was indeed a warranty, and not a contract substantially amounting to insurance, this court held in paragraphs four and five of the syllabus as follows:

"A warranty or guaranty issued to a purchaser in connection with the sale of goods containing an agreement to indemnify against loss or damage resulting from perils outside of and unrelated to inherent weaknesses in the goods themselves, constitutes a contract substantially amounting to insurance within the purview of Section 665, General Code. (*State, ex rel. Duffy, Atty. Genl., v. Western Auto Supply Co.,* 134 Ohio St., 163 [11 O.O. 583, 16 N.E.2d 256], followed.)

"A written warranty delivered to a purchaser, representing that the articles sold are so well and carefully manufactured that they will give satisfactory service under ordinary usage for a specified length of time, and providing for an adjustment in the event of failure from faulty construction or materials, but expressly excluding happenings not connected with imperfections in the articles themselves, is not a contract substantially amounting to insurance within the meaning of Section 665, General Code."

In summarizing the law enunciated in both *Duffy* and *Herbert* it is readily apparent that a contract "substantially amounting to insurance" in this context is one that promises to cover losses or damages over and above, or unrelated to, defects within the product itself.

A careful review of the instant vehicle protection plans indicates that losses or damages sustained by the purchaser of the product which are unrelated to

defects within the product itself are specifically excluded from coverage.[2] Thus, it would appear that under both *Duffy* and *Herbert*, the instant vehicle protection plans are indeed warranties, and are not contracts substantially amounting to insurance.

However, as mentioned before, ODI asserts that the crucial distinction, as noted by the court of appeals below, is that warranties not sold by either the vendor or manufacturer of the product are not made to induce a purchase of the product, and therefore constitute contracts substantially amounting to insurance. While the foregoing assertion may appear to be facially valid, we find it to be unpersuasive. Obviously, the distinction made in this vein was of

---

2. The vehicle protection plans offered by appellant contain nearly identical exclusions from coverage, of which the following excerpt is representative:

"LIMITATIONS AND EXCLUSIONS—YOUR VEHICLE PROTECTION PLAN DOES NOT APPLY:

"1. If your described motor vehicle, or any part of it, is covered by a warranty issued by the manufacturer of your motor vehicle.

"2. If repairs result from fire, water, freezing, riot, windstorm, hail, lighting, earthquake, theft or nuclear contamination.

"3. If repairs arise out of or are revealed by a collision or upset, or malicious mischief or vandalism.

"4. If repairs are caused by negligence, misuse, or your failure to perform required service maintenance.

"5. For the grinding of valves, as such, to raise your engine compression without the necessity of replacing covered units or parts.

"6. If any mechanical alterations are made not recommended by the manufacturer.

"7. If any mechanical failure is caused by overheating or results from the lack of coolants or lubricants.

"8. If repairs or replacement of any part or parts is not specified in this Vehicle Protection Plan.

"9. If your motor vehicle is used to pull a trailer weighing more than 1500 pounds unless authorized 'Trailer Tow' package is installed.

"10. If there has been any tampering or alteration to your odometer so that true and actual mileage of your motor vehicle is not shown.

"11. If any mechanical breakdown results from a structural or mechanical defect for which the manufacturer has publicly announced its responsibility by a recall to correct such defect.

"12. If any mechanical breakdown occurs after repossession of the motor vehicle.

"13. If the motor vehicle described on this certificate is used for commercial, livery or delivery purposes, or for racing or competitive speed.

"14. If you have any delays, however caused, the company will not be responsible, nor for the value of loss of use of your described vehicle.

"15. If directly or indirectly you suffer loss of expense due to lack of your performing all periodic service maintenance which is required by the company or the manufacturer, or due to a condition where your vehicle is out of the care, custody or rented from the holder named hereon.

"16. To expenses, losses or charges to the holder listed hereon for all 'consequential' items of a commercial nature, such as hotel or motel accommodations, telephone calls, meals, loss of goods or loss of salaries or commission resulting from time down for repair, etc. or for loss of life."

no apparent consequence in *Duffy, supra,* inasmuch as it was the *seller* of the product therein who issued the "warranty" that this court found to be a contract substantially amounting to insurance.

In our view, the crucial factor in determining whether a contract is a warranty or something substantially amounting to insurance is not the status of the party offering or selling the warranty, but rather the type of coverage promised within the four corners of the contract itself. Under the rule of law announced in both *Duffy* and *Herbert,* it is clear that warranties that cover only defects within the product itself are properly characterized as warranties (as was the case in *Herbert, supra* ), whereas warranties promising to cover damages or losses unrelated to defects within the product itself are, by definition, contracts substantially amounting to insurance (as was the case in *Duffy, supra* ).

The fact that appellant herein is not the manufacturer, supplier, or seller of the products it purports to warrant is, in our view, of little or no consequence in determining whether its protection plans are subject to R.C. Title 39. Common experience in today's marketplace indicates that a large number of consumer products carry a short-term warranty, but that agreements that extend the warranty beyond the period of time offered by the manufacturer may often be purchased for additional consideration. Certainly, it can be safely surmised that most people are not induced to buy a specific product based upon an extended warranty agreement that may be purchased at an extra cost. Carrying ODI's arguments to their logical extreme, however, a seller of consumer products can offer such extended warranties to cover losses or damages, while independent third parties would be subject to insurance regulations even if the extended warranties specifically exclude losses or damages unrelated to defects in the product. Under such circumstances, we reject the status-determinative approach urged by ODI and adopted by the appellate court below, in favor of the substance-of-the-contract approach urged by appellant. Such a substance-of-the-contract approach was implemented by the court in *Mein v. United States Car Testing Co.* (1961), 115 Ohio App. 145, 20 O.O.2d 242, 184 N.E.2d 489, and is abundantly more consonant with the law and analysis set forth in both *Duffy, supra,* and *Herbert, supra.*

Therefore, based on all the foregoing, we hold that a motor vehicle service agreement which promises to compensate the promisee for repairs necessitated by mechanical breakdown resulting exclusively from failure due to defects in the motor vehicle parts does not constitute a contract "substantially amounting to insurance" within the purview of R.C. 3905.42.

Accordingly, the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. This case evolved out of a number of complaints against Griffin Systems, Inc. ("Griffin") concerning fraud in the inducement and failure to pay claims, filed directly with the Ohio Department of Insurance ("ODI") and out of an investigation instigated by ODI, with the assistance of the Cleveland Better Business Bureau and others. A full-scale hearing was held by ODI covering these matters. Thereafter, the Superintendent of Insurance ordered Griffin to "cease and desist from violating R.C. 3901.20 by advertising, soliciting, selling or underwriting the Vehicle Protection Plan without authorization from the Department of Insurance; from placing before the public advertising which contains untrue, deceptive or misleading assertions and representations; and from entering into contracts with the public that substantially amount to the business of insurance * * *."

The court of appeals upheld the Superintendent, noting that Griffin neither manufactured nor sold any of the goods in question. The court of appeals held that the Vehicle Protection Plans ("VPPs") offered to the consumers were not warranties as described by this court in *State, ex rel. Herbert, v. Standard Oil Co.* (1941), 138 Ohio St. 376, 20 O.O. 460, 35 N.E.2d 437. The record in this case militates in favor of affirming the court of appeals.

During the last twenty years, factory and dealer warranties on various consumer goods have proliferated, particularly in the automobile business. In recent years, a much more comprehensive warranty has been offered by various dealers covering almost every aspect of the future functioning of the automobiles sold and the component parts thereof. This sort of warranty has proved attractive to the buyer and highly profitable to the dealer. In this instance, Griffin had no relationship with the consumer whatsoever until after the consumer had purchased the automobile, at which point Griffin directly solicited the consumer by mail for sale of its VPP. Having signed up the consumer, Griffin reinsured its business with the Great Plains Insurance Company, a Nebraska corporation, which is a wholly owned subsidiary of Griffin and is unlicensed to sell insurance in the state of Ohio. Therefore, without considering whether the VPPs before us here insure against contingencies other than product defects, we have a contract that is totally distinguishable from the warranty we found in *Herbert*. It is perfectly apparent that the VPP is not a warranty proposed by a manufacturer-seller *and* used for the purpose of inducing or increasing sales of the product in question. In a word, we have a case of first impression here which is certainly not controlled by either *Herbert* or *State, ex rel. Duffy, v. Western Auto Supply*

*Co.* (1938), 134 Ohio St. 163, 11 O.O. 583, 16 N.E.2d 256. Indeed, the *Duffy* case seems to directly support the holding of the court of appeals.

Griffin has argued and the majority has inexplicably found that the VPPs involved here do not constitute contracts "substantially amounting to insurance" pursuant to R.C. 3905.42 and, thus, the superintendent has no authority to order a halt to these sundry violations of law. I must vigorously disagree. The majority appears to overlook the difference between the contract sold by Griffin and the warranty described in the *Herbert* case. Here, Griffin is not the warrantor of a product it has manufactured or sold but is rather the insurer of the performance of component parts in a product manufactured and sold by a third party. The *Herbert* case certainly did not exclude all warranties or guarantees from control by ODI but only those warranties guaranteeing "satisfactory service under ordinary usage" of products being sold to a purchaser by the manufacturer or seller of that product. *Id.* at paragraph five of the syllabus.

The Ohio General Assembly has given ODI the broadest authority to regulate *all* forms of insurance by way of R.C. 3905.42, which states in pertinent part: "No company * * * shall engage * * * in the business of insurance, or enter into any contracts substantially amounting to insurance, or in any manner aid therein, or engage in the business of guaranteeing against liability, loss, or damage, * * * unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with." In the *Duffy* case, we " '[b]roadly defined insurance * * * [as] a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency. As regards property and liability insurance, it is a contract by which one party promises on a consideration to compensate or reimburse the other if he shall suffer loss from a specified cause, or to guarantee or indemnify or secure him against loss from that cause.' * * * " *Id.* at 168, 11 O.O. at 585, 16 N.E.2d at 258–259. In my view, the VPPs offered by Griffin are within this definition.

The appellee herein cites Vance, The Law of Insurance (3 Ed.1951) 2, Section 1, which lists the following five elements as distinguishing characteristics of insurance: (1) the insured possesses an insurable interest; (2) the insured is subject to loss through the destruction or impairment of that interest by the happening of some designated peril; (3) the insurer assumes the risk of loss; (4) such assumption is part of the general scheme to distribute actual losses among a large group of persons bearing similar risks; and (5) the insured pays a premium as consideration for the promise. There is

no question that each of the above-described elements is present under Griffin's VPP.

Griffin can hardly be likened to a manufacturer, supplier or seller offering an extended warranty on one of its products. As stated above, Griffin is clearly not involved in the manufacture or sale of automobiles, and has no control over the risk of defects in those products. It is an independent, for-profit entity offering a contract insuring against the risk of mechanical breakdown of a motor vehicle—an insurable interest. Griffin, for consideration of a stated premium from the policyholder, assumes the risk of certain specified losses and presumably distributes that risk among a larger group of persons bearing similar risks. This case does not involve a warranty because a warranty is a statement or representation made by the seller or manufacturer of goods contemporaneously with and as a part of the contract of sale.[3]

Appellee has drawn our attention to opinions from out of state and under federal law in support of its position. *Griffin Systems, Inc. v. Washburn* (1987), 153 Ill.App.3d 113, 106 Ill.Dec. 330, 505 N.E.2d 1121, examined the same VPPs at issue in this case and concluded that they are insurance contracts. That opinion distinguished Griffin's VPPs from a warranty or service contract. The court stated, " * * * the distinguishing feature which sets * * * [manufacturer's or seller's service contracts and warranties] apart from an insurance policy is the fact that the respective compan[ies] *manufacture or sell the products which they agreed to repair or replace.* No third parties are involved nor is there a risk accepted which the company, because of its expertise, is unaware of. * * * " (Emphasis *sic.*) *Id.* at 117–118, 106 Ill.Dec. at 333, 505 N.E.2d at 1124.

As further evidence that Griffin's VPP is insurance and not a warranty, appellee cites a Federal Trade Commission ("F.T.C.") regulation, Section 700.11, Title 16, C.F.R., promulgated pursuant to the authority granted to the F.T.C. to enact rules implementing the Magnuson–Moss Warranty Act, Sections 2301 *et seq.*, Title 15, U.S.Code. See Sections 2309 and 2312(c), Title 15, U.S.Code. The rule is relevant to the issue before us today in that it determines that VPPs such as the ones offered by Griffin are policies of insurance. Part (a) of the rule reads as follows:

---

3. See, also, 1958 Ohio Atty. Gen. Ops. No. 2897, which states:

" * * * There is a definite distinction between (1) those cases in which the seller wishes to make his merchandise more desirable by guaranteeing its quality or its use for a certain period, where the guarantee is limited to happenings actually connected with imperfections in the articles themselves, and (2) those cases where the sole objective is to sell contracts designed to *distribute* risks among many purchasers. * * * " (Emphasis *sic.*) The transaction then being considered by the Attorney General was an automobile mechanical breakdown contract offered by a party not in the vendor/vendee relationship—precisely as Griffin's situation.

"The [Magnuson–Moss Warranty] Act recognizes two types of agreements which may provide similar coverage of consumer products, the written warranty, and the service contract. In addition, other agreements may meet the statutory definitions of either 'written warranty' or 'service contract,' but are sold and regulated under state law as contracts of insurance. One example is the *automobile breakdown insurance policies* sold in many jurisdictions and regulated by the state as a form of casualty insurance. The McCarran–Ferguson Act, 15 U.S.C. 1011 et seq., precludes jurisdiction under federal law over 'the business of insurance' to the extent an agreement is regulated by state law as insurance. Thus, such agreements are subject to the Magnuson–Moss Warranty Act only to the extent they are not regulated in a particular state as the business of insurance." (Emphasis added.) Thus, the F.T.C. considers such contracts ripe for insurance regulation.

Griffin urges this court to focus on whether it would "make sense" to apply the insurance statutes and regulations to its VPPs. The real issue, however, is whether each VPP contains the requisite elements of insurance such that it is a contract that "substantially amount[s] to insurance." See *Mein v. United States Car Testing Co.* (1961), 115 Ohio App. 145, 20 O.O.2d 242, 184 N.E.2d 489. As shown above, Griffin's VPP contains those elements and is, therefore, insurance. Because it is insurance, under R.C. 3905.42, ODI has the authority to regulate it.[4]

Accordingly, I strongly dissent.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.

---

4. I offer yet further support for the appellee's position. Webster's defines "insurance" in part as "coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril[.]" Webster's Third New International Dictionary (1986) 1173. Black's defines "insurance" similarly: "A contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. * * * " Black's Law Dictionary (6 Ed.1990) 802.

All forms of warranties and guarantees meet this definition on some level. A simple manufacturer's limited warranty that comes with the product protects a purchaser from a specified loss (usually the value of the product) from a specified contingency or peril (usually a manufacturing defect). In fact, looking at Black's definition of "insurance," I am sure an accountant with the relevant actuarial and financial data could specify the amount of the product's price traceable to the warranty. At the same time, however, a manufacturer's warranty included in the price of the product is also a refinement of the manufactured product purchased: you do not just purchase a toaster, but rather you purchase a toaster that works, and a breach of the warranty means the product you received was not the product for which you contracted. I subscribe to this latter view of manufacturers' warranties where they are

received as part of the product price; they are not contracts "substantially amounting to insurance."

However, any and all warranties sold apart from a product seem to fall into the definition of "insurance." This is particularly apparent under the "modus operandi" before us. This form of insurance is ripe for abuse by the less than scrupulous and, as such, is ripe for regulation by ODI. The record in this case surely supports this premise.