Zimmerman, J.
 

 As indicated in the statement of the case, the Attorney General contends that the respondent, in connection with sales of its automobile tires, enters into an agreement with the purchasers of such tires, constituting either a contract of insurance or a contract substantially amounting to insurance within the meaning of Section 665, General Code, and that respondent, not having obtained a certificate from the state Superintendent of Insurance authorizing it to do an insurance business, should be made to desist from the practice.
 

 The relator also contends that such agreement, coupled with its practical interpretation by the respondent’s dealers or agents, brings the present case within the decision of
 
 State, ex rel. Duffy, Atty. Genl.,
 
 v.
 
 Western Auto Supply Co.,
 
 134 Ohio St., 163, 16 N. E. (2d), 256, 119 A. L. R., 1236.
 

 Section 665, General Code, provides:
 

 “No company, corporation, or association, whether organized in this state or elsewhere, shall engage either directly or indirectly in this state in the business of insurance, or enter into any contracts substantially amounting to insurance, or in any manner aid therein, or engage in the business of guaranteeing against liability, loss or damage, unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with.
 

 “No person, firm, association, partnership, company and/or corporation shall publish or distribute, receive and print for publication or distribution any advertising matter wherein insurance business is solicited unless such advertiser has complied with the laws of this
 
 *381
 
 state regulating the business of insurance, and a certificate of such compliance is issued by the Superintendent of Insurance.
 

 “Whoever violates the provisions of this section with reference to advertising, shall be deemed guilty of a misdeameanor and upon conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars for each offense.”
 

 “Insurance,” as that term is commonly understood, is a contract whereby a promisor, for a consideration usually called a premium, becomes bound to indemnify or compensate the promisee or one designated by him for loss or damage from stated causes in a definite or ascertainable amount. There can be little doubt that the primary purpose of the quoted statute, although broad in language, is to prevent or discourage the unregulated and unlicensed from carrying on within the borders of Ohio the general type of business described in the foregoing definition of insurance, thus protecting the public from surrendering its money in exchange .for questionable or worthless pieces of paper denominated insurance policies.
 

 Laws regulating and supervising those engaged in the business of insurance were enacted chiefly in the interest of the people to make it as certain as possible that the fund created by their contributions would be held, managed and disbursed in a prudent and proper manner.
 

 With these observations as a background, we turn to a discussion of what is a warranty and what is a contract possessing features of insurance. Relating to the sale of commodities, a warranty has been defined as a statement or representation having to do with the kind, quality, variety or title of the goods sold. On the other hand, a number of courts have announced the rule that if the vendor of goods guarantees them against hazards disconnected with defects in the arti
 
 *382
 
 cles themselves, such guaranty is equivalent to a contract of insurance.
 

 This was the view taken in
 
 State, ex rel. Duffy, Atty. Genl.,
 
 v.
 
 Western Auto Supply Co., supra.
 
 The “guarantee” under examination in that case, which is different in phraseology from the “warranty and adjustment agreement” now before us, was held to constitute a contract “substantially amounting to insurance” because it contained an agreement to indemnify against loss or damage resulting from perils outside of and unrelated to weaknesses inherent in the tires.
 

 As we read the instant warranty, the seller represents to the purchaser that the materials and labor incorporated into its tires are of such quality that the tires will render satisfactory service for a designated period of time under the usual conditions of wear and tear, and that if the tires fail because of faulty construction or materials, repairs will be made free of charge or new tires substituted at a reduced price based on the length of time which has elapsed since the original purchase. Then follows a specific list of tire injuries, not ordinarily associated with faulty construction or materials, and other items for which the seller disclaims any responsibility whatsoever.
 

 We find difficulty in construing this agreement as more than a representation that the tires being sold are so well and carefully manufactured that they will give satisfactory service under ordinary usage for a specified number of months, excluding happenings disassociated from imperfections in the tires themselves.
 

 Relator stresses the statements and conduct of respondent’s agents as testified to by the witnesses in the depositions mentioned. Assuming the admissibility of such testimony, it discloses a course of conduct in direct contradiction of paragraphs three and five of the warranty and adjustment agreement, and proof is lacking that the respondent knew about or approved such actions. A principal, whether a corpo
 
 *383
 
 ration or natural person, may not be bound beyond the apparent or ostensible authority of the agent.
 

 It need hardly be said that we are living in a highly competitive age. If the manufacturer or distributor of a certain brand of automobile tires can advantageously issue a warranty of the kind involved in this case for the benefit of customers and without additional charge, his competitors are at liberty to do likewise, and if their tires are of equal or better value, they should also be able to interest buyers and profit from increased sales. Furthermore, they may exercise their ingenuity and devise other methods, within the law, to attract prospective purchasers and stimulate a desire and demand for their product.
 

 In the event dishonest or deceitful practices should develop, remedial legislation could be passed by the Legislature to eliminate the evils, or relief might be had from another source on the ground that unfair trade practices were being pursued.
 

 Certainly, Section 665, General Code, was not designed to apply to purely commercial transactions connected with which warranties are made for the purpose of inducing sales and creating good will, and that section should be invoked with discrimination in the merchandising field.
 

 In conclusion, it is not our intention to overrule the case of
 
 State, ex rel. Duffy, Atty. Genl.,
 
 v.
 
 Western Auto Supply Co., supra,
 
 or abandon the principles there applied. We do think, however, the doctrine of that case should not be extended.
 

 “* * *
 
 quo warranto
 
 is a prerogative writ to be employed to shield the sovereignty of the state from invasion and to prevent the abuse of corporate powers. * * * It is quite obvious that it should not .be resorted to at the instance of'a competitor, for the purpose of preventing competition.”
 
 State
 
 v.
 
 Dayton Traction Co.,
 
 64 Ohio St., 272, 280, 60 N. E., 291. Being of an extraordinary nature, it is to be used gen
 
 *384
 
 erally with caution and discretion, and in the public interest. 33 Ohio Jurisprudence, 1029, Section 76.
 

 The relator, in our opinion, having failed to make a case against the respondent, the judgment of ouster prayed for is denied.
 

 Writ denied.
 

 Weygandt, C. J., Turner, Williams, Hart and Bettman, JJ., concur.
 

 Matthias, J., not participating.