**COUNTY SCHOOL BOARD OF WASHINGTON COUNTY, VIRGINIA, Plaintiff,**

v.

**GAF CORPORATION, a Delaware Corporation, Defendant.**

**Civ. A. No. 79–0164–A.**

United States District Court, W. D. Virginia, Abingdon Division.

Oct. 10, 1979.

Wade W. Massie, Penn, Stuart, Eskridge & Jones, Abingdon, Va., for plaintiff.

Richard M. Thomas, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

### GLEN M. WILLIAMS, District Judge.

Plaintiff, County School Board of Washington County, Virginia, has filed this action alleging jurisdiction based upon diversity of citizenship with the amount in controversy exceeding ten thousand dollars ($10,000.00). 28 U.S.C. § 1332. Diversity is complete because plaintiff is a Virginia resident whereas defendant, GAF Corporation, is a Delaware corporation with its principal place of business in some state other than Virginia. The facts framing this action are as follows:

In 1974 plaintiff was having two new elementary schools constructed in Washington County, Virginia, known as the Meadowview Elementary School and the E. B. Stanley Elementary School. During this period, defendant entered into two contracts with plaintiff, respectively relating to each school, wherein it agreed to supply roofing materials to the contractors or subcontractors engaged in the construction of the two schools. Each contract contained an "Inspection and Service Guarantee," wherein defendant agreed that for a period of ten years it would repair the "roofing membrane and base flashing as shall be necessary solely in order to correct leaks resulting" from the following causes: Natural deterioration of GAF roof membrane or GAF base flashing; blisters; bare spots; fish-mouths; ridges; splits not caused by structural failure; buckles and wrinkles; thermal shock; gravel stop breaks (except repair of metal); plastic pans; workmanship in applying roofing membrane or base flashing; and slippage of roofing membrane or base flashing.

The contract also excluded certain causes from this guarantee. These exclusions were roof maintenance for correction of conditions other than leaks; natural disasters such as windstorms, hail, floods, hurricanes, lightning, tornadoes, and earthquakes; structural defects or failure; damage to building or contents; changes in usage of building unless approved in writing in advance by GAF [defendant]; damage resulting from any new installations on or through the roofing membrane; and, any repairs or other applications to the roof membrane or base flashing after date of completion, unless performed in a manner acceptable to and approved by GAF [defendant] in writing.

Shortly after completion of the schools, each roof began to leak, damaging the interior of the buildings. Plaintiff contends that repeated demands were made on defendant, however, it has failed to repair the defective roofs. As a result, plaintiff has filed this action and secured service on defendant through the "Unauthorized Insurers Process Act," codified at Va.Code Ann. § 38.1–63 *et seq.* (Repl.Vol.1976). Defendant, arguing that service was faulty, has responded with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5).

Specifically, plaintiff contends that defendant's guarantees constituted insurance contracts and, therefore, the contested service of process was valid under Va.Code Ann. § 38.1–64 (Repl.Vol.1976). This provision appoints the clerk of the State Corporation Commission as statutory agent for service of process on foreign or alien insurance companies not authorized to do business in Virginia. Defendant argues that the guarantees were mere warranties and, as such, do not constitute insurance contracts. Therefore, it is contended, defendant is not subject to service under § 38.1–64 and, for that reason, the service of process should be set aside and the suit dismissed.

The sole question before this court is whether the Inspection and Service Guarantees are insurance policies or warranties. There is no Virginia case on point, and the Virginia statutory definition of insurance is nonrestrictive. *See* Va.Code Ann. § 38.1–24 (Repl.Vol.1976).

In distinguishing a warranty from an insurance contract, it can be generally said that:

> Relating to the sale of commodities, a warranty has been defined as a statement or representation having to do with the kind, quality, variety or title of the goods sold. On the other hand . . . if the vendor of goods guarantees them against hazards disconnected with defects in the articles themselves, such guarantee is equivalent to a contract of insurance.

*State v. Standard Oil Co.*, 138 Ohio St. 376, 35 N.E.2d 437 (1941). In other words, "[a] warranty promises indemnity against defects in the articles sold, while insurance indemnifies against loss or damage resulting from perils outside of and unrelated to defects in the article itself." 44 C.J.S. *Insurance* § 1b (1945). *See also Mein v. United States Car Testing Co.*, 115 Ohio App. 145, 184 N.E.2d 489, 493, 20 Ohio Ops.2d 242 (1961); *State v. Western Auto Supply Co.*, 134 Ohio St. 163, 16 N.E.2d 256 (1948); 43 Am.Jur.2d *Insurance* § 16 (1969).

In applying this principle, courts have considered the exclusions' effect upon the guarantee. If the guarantee disclaims liability for certain causes disassociated from defects in the product itself, then this limits the guarantee to those defects in the product itself and, thereby, constitutes a warranty. *See Standard Oil*, 35 N.E.2d at 441. In the case at bar, however, the distinction between contracts that guarantee associated causes and exclude disassociated causes is not applicable because the contracts herein do not make this clear-cut distinction. For example, the contracts exclude the disassociated cause of earthquakes as well as any associated cause that may arise after plaintiff has changed the usage of the building without prior approval by defendant. The associated-disassociated distinction is further undermined because one of the causes specifically guaranteed, "[w]orkmanship in applying roofing membrane or base flashing," is a cause disassociated with any defect in the product itself. With this distinction destroyed, any argument that the exclusions limit the guarantees to defects in the product itself must fail.

These contracts guarantee against the specified hazard of leaks, and, furthermore, the defendant recognizes the comprehensiveness of its undertaking by restricting its liability in excluding certain causes. *See Mein*, 184 N.E.2d at 493. Since the guarantees do not limit themselves to indemnifying against defects in the article itself, they must be construed as contracts of insurance. 44 C.J.S. *Insurance* § 1(b) (1945).

In accordance with the reasons stated above, the court finds that service on defendant was valid under Va.Code Ann. § 38.1–64 (Repl.Vol.1976). Therefore, it is ORDERED that defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(4) and (5) is hereby denied.