EQUITY DIAMOND BROKERS, INC., Appellant,

v.

TRANSNATIONAL INSURANCE COMPANY et al., Appellees.

[Cite as *Equity Diamond Brokers, Inc. v. Transnational Ins. Co.*, 151 Ohio App.3d 747, 2003-Ohio-1024.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010554.

Decided March 7, 2003.

748

Robert G. Kelly, for appellant.

Traub, Eglin, Lieberman, Straus and Stephen D. Straus; and Freund, Freeze & Arnold and Mark A. MacDonald, for appellee Transnational Insurance Company.

Schroeder, Maundrell, Barbiere & Powers and William P. Schroeder, for appellee International Jewelers Block & Fine Arts Insurance Services, Inc.

Deters, Benzinger & LaVelle, P.S.C., and William J. Moran Jr., for appellee E. Kinker & Company, d.b.a. Kinker–Eveleigh Insurance Agency.

DOAN, Presiding Judge.

{¶ 1}  Plaintiff-appellant, Equity Diamond Brokers, Inc. ("EDB"), is a retail and wholesale jeweler.  It filed suit against defendants-appellees, Transnational Insurance Company ("Transnational"), International Jewelers Block & Fine Arts Insurance Services ("IJB"), and E. Kinker & Company, d.b.a. Kinker–Eveleigh Insurance Agency ("Kinker").  It sought insurance coverage and/or damages for the failure to provide insurance related to the theft of jewelry from Brian Higgins, one of EDB's salespersons.  The trial court granted appellees' motions for summary judgment and overruled EDB's motion.

{¶ 2}  The record shows that on November 10, 1998, Higgins was driving through Georgia while returning from a sales trip when he decided to stop at a restaurant to eat.  He pulled into the restaurant's parking lot and parked directly in front of the restaurant.  He left three nylon bags containing trays of jewelry in the back seat of his Dodge Durango.  He ate at a table by the restaurant's front windows so that he could see his SUV at all times.

{¶ 3}  After eating, Higgins walked to the front of the restaurant to pay his check.  He stated that he could see his vehicle as he approached the cashier's desk.  After he paid for his meal with a credit card, an unidentified person told him that he had dropped some money.  He became suspicious because he knew that he had not dropped any money, so he ran out to the parking lot where he

saw a white minivan sitting perpendicular to his SUV. He ran after the minivan and unsuccessfully tried to smash out its window, and the van sped out of the parking lot. Then Higgins noticed that his rear driver's side window had been "punched out" and that his bags of jewelry were gone.

{¶ 4} At the time of the robbery, EDB was covered by a jeweler's block insurance policy that was issued by Commercial Underwriters Insurance Company ("CUIC"). It contained an unattended-vehicle exclusion. The policy provided that it insured against all risks of loss or damage to the insured property except "[l]oss or damage to property while in or upon any Automobile, Motorcycle or any other vehicle unless, at the time of loss or damage occurs, there is actually in or upon such vehicle, the Insured, or a Permanent Employee of the Insured, or a person whose sole duty is to attend the vehicle, except as may be endorsed hereon." Coverage was ultimately denied based on this exclusion because Higgins was not "actually in or upon" the automobile at the time of the robbery.

{¶ 5} EDB did not receive the actual written policy until a few days after the robbery. In June 1998, Edward Lane, co-founder and president of EDB, had discussed insurance coverage for July 1998 through July 1999 with EDB's insurance agent, Richard Lonneman, who worked for Kinker. He met at the same time every year with Lonneman, who explained coverage and exclusions before any policies were issued. EDB frequently did not receive the policies themselves until several months later.

{¶ 6} Lane specifically declined the expensive unattended-vehicle coverage because it was company policy that vehicles should not be left unattended. In fact, the insurance polices issued to EDB in previous years had all contained unattended-vehicle exclusions with language similar to the policy issued by CUIC in 1998. Higgins testified that it was his understanding and an unwritten company policy that a vehicle was not unattended as long as it was in the salesperson's sight.

{¶ 7} After the June 1998 meeting, Lonneman contacted Brian McCluskey of IJB, a broker specializing in insurance for jewelers. IJB obtained a binder from Transnational and notified Lonneman that EDB's coverage was bound with Transnational effective July 1, 1998, through June 30, 1999. Lonneman forwarded the binder to EDB and notified EDB that Transnational was issuing the insurance policy.

{¶ 8} Transnational, however, was not licensed to do business in Ohio. Some confusion existed over whether Transnational would actually issue the policy, and numerous communications occurred between IJB and Transnational in July and August 1998, all without EDB's knowledge. Eventually, though, Transnational entered into a "fronting" arrangement with CUIC, which was licensed to do business in Ohio. Under that arrangement, CUIC issued the jeweler's block

policy. Transnational and CUIC entered into a reinsurance agreement in which all of CUIC's liability under the jeweler's block policy issued to EDB was reinsured by Transnational. Under this agreement, Transnational was required to fully reimburse and hold CUIC harmless for any covered claims that may have arisen under the policy CUIC issued to EDB. After the robbery, Transnational never claimed that the binder was not valid or stated that it was not obligated to provide insurance coverage to EDB. The sole reason coverage was denied was the unattended-vehicle exclusion.

{¶ 9} In this appeal, EDB presents three assignments of error for review, which we address out of order. EDB does not raise the central issue in the case, which is the validity of the unattended-vehicle exclusion, until its third assignment of error. In that assignment of error, it argues that the phrase "actually in or upon" the vehicle is ambiguous and therefore must be construed in its favor. It also argues that because appellees were not properly licensed in Ohio to issue jeweler's block insurance, the exclusionary clause was not enforceable by the insurer. This assignment of error is not well taken.

{¶ 10} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061. The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. In insurance polices, as in other contracts, courts should give words and phrases their plain and ordinary meaning unless something in the contract indicates a contrary intention. *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 259 N.E.2d 123; *Nationwide Ins. Co. v. Tobler* (1992), 80 Ohio App.3d 560, 564, 609 N.E.2d 1318.

{¶ 11} Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties. *Gomolka,* supra, at 168, 24 O.O.3d 274, 436 N.E.2d 1347; *Bowling v. St. Paul Fire & Marine Ins. Co.,* 149 Ohio App.3d 290, 2002-Ohio-4933, 776 N.E.2d 1175, at ¶ 15; *Tobler,* supra, at 564, 609 N.E.2d 1318. However, where the provisions of an insurance policy are reasonably susceptible of more than one interpretation, courts must construe them strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus; *Bowling,* supra, at ¶ 15.

{¶ 12}   At issue in this case is the interpretation of the phrase "actually in or upon the vehicle" contained in the unattended-vehicle exclusion. EDB relies upon *Gottlieb & Sons, Inc. v. Hanover Ins. Co.* (Apr. 21, 1994), 4th Dist. No. 64559, 1994 WL 144539, which is the only Ohio case we can find on the issue. In that case, the theft occurred when the employee had left jewelry in the trunk of his car while he briefly went into a hotel to inquire about a room. The court held that the phrase "in or upon the vehicle" in the unattended-vehicle exclusion was ambiguous. Therefore, it reversed the trial court's granting of summary judgment to the insurer. It remanded the case to the trial court to determine whether the employee "was within a reasonable geographic perimeter around the vehicle and had some reasonable relationship with the vehicle at the time the theft occurred."

{¶ 13}   We disagree with the reasoning of *Gottlieb*. Most cases interpreting similar policy language have found the phrase "in or upon the vehicle" to be unambiguous. See Annotation, Construction and Effect of "Jeweler's Block" Policies or Provisions Contained Therein (1994), 22 A.L.R.5th 579; Couch on Insurance (3d Ed.2003), Section 154:74. Based on exclusions with nearly identical language, courts have consistently "denied coverage to insureds who were not literally in or upon their vehicles at the time of the losses, even though the insureds may have been only a short distance away from the vehicle, watching the vehicle, or absent from the vehicle for only a short period of time." *Am. Stone Diamond, Inc. v. Lloyds of London* (S.D.Tex.1996), 934 F.Supp. 839, 843. Accord *Thomas Noe, Inc. v. Homestead Ins. Co.* (C.A.6, 1999), 173 F.3d 581; *Jerome I. Silverman, Inc. v. Lloyd's Underwriters, Inc.* (S.D.N.Y.1976), 422 F.Supp. 89; *Revesz v. Excess Ins. Co.* (1973), 30 Cal.App.3d 125, 106 Cal.Rptr. 166; *Williams v. Fallaize Ins. Agency, Inc.* (1996), 220 Ga.App. 411, 469 S.E.2d 752; *Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co.* (1951), 235 Minn. 243, 50 N.W.2d 629; *Wideband Jewelry Corp. v. Sun Ins. Co. of New York, Inc.* (1994), 210 A.D.2d 220, 619 N.Y.S.2d 339; *Royce Furs, Inc. v. Home Ins. Co.* (1968), 30 A.D.2d 238, 291 N.Y.S.2d 529.

{¶ 14}   We agree with the reasoning of those cases. In our view, the phrase "actually in or upon the vehicle" is unambiguous. Therefore, we must apply the language of the policy as written. Under the plain language of the policy, no coverage exists because neither Higgins nor another EDB employee was actually in or upon the vehicle at the time of the theft.

{¶ 15}   We realize this is a harsh result. Jeweler's block insurance is a special type of insurance designed to offer a single policy with adequate coverage for the risks inherent in the jewelry business. *Couch*, supra, at Section 1:57. No insurance policy insures against every loss, however. In this case, EDB specifically assumed the risk by declining unattended-vehicle coverage. "The mere fact

that the assured is compelled to assume a loss which has not been covered by the insurance will not justify courts, by a process of judicial construction, in stretching words beyond their usual meaning to compel an insurer to accept a risk not covered by the policy of insurance." *Ruvelson,* supra, at 251, 50 N.W.2d at 634.

▇ {¶ 16} Nevertheless, EDB contends that the unattended-vehicle exclusion is not enforceable under R.C. 3901.17(H). R.C. 3901.17 generally discusses obtaining personal jurisdiction over a foreign insurer not authorized to transact business in Ohio. EDB contends that because appellees were not properly licensed in Ohio, section (H) of the statute applies. It states, "No contract of insurance effected in this state by mail or otherwise by any such insurer is enforceable by such insurer."

{¶ 17} However, the policy in this case was not issued by Transnational or the other appellees in this case. CUIC, which was licensed to do business in Ohio, issued the policy. Further, R.C. 3901.17(I) specifically provides that it does not apply to surplus-lines insurance under R.C. 3905.30 through 3905.36, which would include jeweler's block insurance, and to the "transaction of reinsurance by insurers." Consequently, the provision on which EDB relies does not apply in the present case.

{¶ 18} EDB refers to "rogue agents, brokers and insurers." The record does not support this scenario. Instead, it shows that reinsuring agreements are common in the industry and are a legitimate means of conducting business. EDB was covered by a valid insurance policy at the time of the robbery. That policy contained the same exclusion with virtually the same language that had been in the previous policies issued to EDB. The denial of the claim was not due to the invalidity of the policy but to the exclusion.

{¶ 19} Under the circumstances, we find no issue of material fact. Construing the evidence most strongly in EDB's favor, we hold that reasonable minds could reach but one conclusion—that coverage in this case was precluded by the unattended-vehicle exclusion. Appellees were entitled to judgment as a matter of law on EDB's breach-of-contract claim. Consequently, the trial court did not err in granting summary judgment in their favor. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; *Stinespring v. Natorp Garden Stores, Inc.* (1998), 127 Ohio App.3d 213, 215–216, 711 N.E.2d 1104.

{¶ 20} In its first assignment of error, EDB contends that the trial court erred in granting summary judgment in favor of appellees. It argues that it is negligence per se for a person or entity to conduct the business of insurance in Ohio without a proper license as required by former R.C. 3905.01, and that the trial court erred by refusing to apply this doctrine. Further, it argues that, in a

dispute between an insured and various members of the insurance industry who were not licensed to conduct business in Ohio, the trial court erred in failing to apply R.C. 3901.17.

{¶ 21} It is undisputed that CUIC, which actually issued the policy in connection with the reinsurance agreement, was licensed to conduct business in Ohio. Further, the evidence showed that Lonneman and Kinker were both licensed to engage in the insurance business in Ohio. EDB's main complaint is that appellees had not obtained surplus-lines broker's licenses as required by R.C. 3905.30 through R.C. 3905.35.

{¶ 22} R.C. 3905.99 sets forth penalties of fines and imprisonment for violations of Ohio's surplus-lines law. At least two courts have held that the remedy set forth in R.C. 3905.99 is exclusive and creates no private right of action. *Highway Equip. Co. v. Alexander Howden Ltd.* (Bkrtcy.S.D.Ohio 1993), 153 B.R. 186, 202–203, affirmed (Aug. 15, 1995), S.D. Ohio No. 94–3372, 1995 WL 490125; *W. Res. Care Sys. v. Masters* (Sept. 28, 1999), 7th Dist. Nos. 97 CA 95 and 97 CA 104., 1999 WL 783951 We agree. See *Elwert v. Pilot Life Ins. Co.* (1991), 77 Ohio App.3d 529, 542, 602 N.E.2d 1219. "[W]here a statute creates a new right or imposes a new duty, and prescribes a remedy for its violation, the remedy thus prescribed is exclusive." *Fletcher v. Coney Island, Inc.* (1955), 100 Ohio App. 259, 271, 60 O.O. 218, 136 N.E.2d 344.

{¶ 23} Further, even if we were to hold that appellees' alleged violations of Ohio's insurance licensing statutes were negligence per se, EDB was still not entitled to judgment as a matter of law. Proof of negligence per se is not proof of liability per se. EDB was still required to demonstrate that the appellees' negligence was the proximate cause of its damages. *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 496–497, 727 N.E.2d 1277; *Pond v. Leslein* (1995), 72 Ohio St.3d 50, 647 N.E.2d 477.

{¶ 24} All of EDB's arguments regarding licensing are simply an attempt to circumvent the unattended-vehicle exclusion. The regulation of entities in the insurance business is to "prevent or discourage the unregulated and unlicensed from carrying on" the insurance business "within the borders of Ohio * * *, thus protecting the public from surrendering its money in exchange for questionable or worthless pieces of paper denominated insurance policies." *State ex rel. Herbert v. Std. Oil Co.* (1941), 138 Ohio St. 376, 381, 20 O.O. 460, 35 N.E.2d 437. EDB was not the recipient of a worthless piece of paper. Appellees all acknowledged that the insurance policy issued by CUIC and reinsured by Transnational was a valid policy that would have covered EDB's loss but for the exclusion.

{¶ 25}  Policies issued in previous years to EDB all contained unattended-vehicle exclusions employing similar language.  Lane testified that he specifically rejected the expensive unattended-vehicle coverage because EDB did not leave its vehicles unattended.  EDB's misapprehension about what constituted an unattended vehicle cannot change the unambiguous policy language.  The policy in effect at the time of the robbery and all previous policies clearly provided that coverage was excluded unless an EDB employee was "actually in or upon the vehicle" and did not merely have the vehicle in sight.  Despite EDB's claim to the contrary, it got the coverage for which it had paid.  Consequently, any alleged negligence by appellees in failing to obtain the proper licenses was not the proximate cause of EDB's loss and the trial court did not err in granting summary judgment in favor of appellees.  See *Harless,* supra, at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Stinespring,* supra, at 215, 711 N.E.2d 1104.  We, therefore, overrule EDB's first assignment of error.

{¶ 26}  In its second assignment of error, EDB contends that the trial court erred by refusing to grant its motion for summary judgment.  It argues that the court should have applied the doctrines of promissory estoppel and negligent misrepresentation.  This assignment of error is not well taken.

{¶ 27}  The record shows that EDB did not meet its burden to demonstrate that it was entitled to judgment as a matter of law on the issues of promissory estoppel and negligent misrepresentation.  See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264; *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835; *Talley v. Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 357 N.E.2d 44; *R. Corwin Pauly Jr. & Assoc. v. Keko Corp.,* 146 Ohio App.3d 669, 2001-Ohio-4351, 767 N.E.2d 1203, at ¶ 10; *Stinespring,* supra, at 215–216, 711 N.E.2d 1104; *Brose v. Bartlemay* (Apr. 16, 1997), 1st Dist. No. C–960423, 1997 WL 180287.  These issues are another attempt to circumvent the clear and unambiguous terms of the policy.  Consequently, the trial court did not err in overruling EDB's motion for summary judgment.  We overrule EDB's second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT and GORMAN, JJ., concur.